# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | : |
| Avis Katrena Pierre | : | |
| xxx-xx-3730 | :CHAPTER 7 | |
| Debtor. | :CASE NO. 18-17617/MDC | |
| | : | |
| | : | |
| U.S. Bank National Association as | : | |
| Legal Title Trustee for Truman 2016 | :Courtroom Number 2 | |
| SC6 Title Trust | : | |
| Movant, | : | |
| v. | : | |
| | : | |
| Avis Katrena Pierre | : | |
| Debtor, | : | |
| And | : | |
| | : | |
| Gary F. Seitz, Esquire | :Hearing Date:  April 10, 2019 @ 10:30 a.m. | |
| Trustee, | : | |
| | : | |
| Respondents. | : | |

## MOTION OF U.S. BANK, NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT MOVANT TO EXERCISE ITS RIGHTS UNDER STATE LAW AGAINST CERTAIN REALTY KNOWN AS 125 EAST PROVIDENCE ROAD, ALDAN, PENNSYLVANIA 19018

Movant, by its Attorney, Romano Garubo & Argentieri, Emmanuel J. Argentieri, Esquire appearing, hereby requests a modification of the automatic stay and leave so it can exercise its rights under state law against certain realty and avers as follows:

1. Movant is U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust (hereinafter "Movant").

2. Movant is the holder of a Note secured by a mortgage on the Debtor's realty commonly known as 125 EAST PROVIDENCE ROAD, ALDAN, PENNSYLVANIA 19018. **(Please see Exhibit "A" attached hereto and incorporated herein).**

3.     Debtor's Chapter 13 petition was filed November 15, 2018.  Thereafter, the case was converted to a chapter 7 proceeding.

4.     Debtor's mortgage account is due contractually for the June 1, 2012 mortgage payment in the amount of $2,061.66.

5.     The outstanding amount due on Debtor's mortgage account as of February 7, 2019 totaled $373,403.70.

6.     According to Debtor's Schedule A, there is little to no equity in the subject property.  The Debtor alleges a fair market value of $260,000.00. **(Please see Exhibit "B" attached hereto and incorporated herein)**.

7.     10% cost of sale totals $26,000.00.   Allowable exemption totals $23,675.00 pursuant to 11 *U.S.C.* § 522(b)(3)(8).

8.     In the context of the chapter 13 case prior to conversion to chapter 7, the Debtor should have made (4) payments outside of the plan since the date of filing petition.

9.     Since the date of filing, Debtor did not make any payments at all to Movant.

10.     Debtor was behind (4) payments outside the plan, through the payment due March 1, 2019 prior to conversion.  The total amount of delinquency outside the plan was $9,540.96. (12/1/18 through 3/1/19 post-petition payments at $2385.24).

11.     Pursuant to the foregoing, Movant contends that cause exists to grant it relief from the Automatic Stay.  Movant is not adequately protected as there is clearly no equity in the property.  Accordingly, Movant is entitled to relief from the automatic stay under 11 *U.S.C.* §362(d)(1).

12.     Movant has cause to have relief from the Automatic Stay effective immediately and such relief should not be subject to the fourteen day period set forth in Bankruptcy Rule

4001(a)(3), as Movant will incur substantial additional costs and expenses by the imposition of said fourteen day period.

13.    Movant has had to incur legal fees as a result of the prosecution of this Motion.

14.    The other Respondent is the Chapter 7 Trustee appointed in the above-captioned chapter 13 proceeding.

WHEREFORE, Movant respectfully requests that the Court enter an Order which grants it relief from the Automatic Stay, along with all other relief the Court deems just and equitable under the circumstances.

ROMANO GARUBO & ARGENTIERI
Attorneys for Movant

By: /s/  Emmanuel J. Argentieri
        Emmanuel J. Argentieri, Esquire
        PA Attorney ID No. 59264

Dated:  3/13/19

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND
MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN
CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATE I MUST PAY.

March 21, 2007                         Aldan                         PA

(Date)                                (City)                        (State)

125 East Providence Road, Aldan, PA  19018
(Property Address)

**1. BORROWER'S PROMISE TO PAY**
      In return for a loan that I have received, I promise to pay U.S. $ 188,700.00 (this amount is called
"principal"), plus interest, to the order of the Lender. The Lender is EquiFirst Corporation . I will make all
payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this
Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this
Note is called the "Note Holder."

**2. INTEREST**
      Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest
at a yearly rate of  9.600 %. The interest rate I will pay may change in accordance with Section 4 of the Note.
      The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

**3. PAYMENTS**
      **(A) Time and Place of Payments**
      I will pay principal and interest by making a payment every month.
      I will make my monthly payments on the 1st day of each month beginning on  May 1, 2007
      I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before principal. If on  April 1, 2037   , I still owe amounts under this
Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
      I will make my monthly payments at
EquiFirst Corporation , 500 Forest Point Circle , Charlotte, NC 28273
or at a different place if required by the Note Holder.

      **(B) Amount of My Initial Monthly Payments**
      Each of my initial monthly payments will be in the amount of U.S. $ 1,600.48 .
This amount may change.

      **(C) Monthly Payment Changes**
      Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest
rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly
payment in accordance with Section 4 of this Note.

Multistate Adjustable Rate Note-Libor Index
EF815N (2/00)    (Pennsylvania Version)
Loan Numb                                Page 1 of 4                         Initials

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on **April 1, 2009**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **7.200** percentage points ( **7.200** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.600%** or less than **9.600** % . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.600%** or less than the initial interest rate provided for in Section 2 of this Note.

**(E) Effective Date of Change**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER RIGHT TO PREPAY

**(A) Prepayment**    I have the right to make payments at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**(B) Prepayment Penalty**


In the event, during the first  2 years after the execution of this Note, I make a prepayment and the prepayment exceeds twenty percent (20%) of the original principal amount of the loan in any twelve (12) month period, I will pay a prepayment charge in an amount equal to six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the loan within the twelve (12) month period. The Note Holder will not assess a  prepayment penalty after the 2nd anniversary of the date of execution of this Note.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

"WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED"

| | | |
|---|---|---|
| _____ (Seal) | _____ (Seal) | |
| Ruben A Pierre              -Borrower | Avis K Pierre              -Borrower | |
| _____ (Seal) | _____ (Seal) | |
|                            -Borrower |                            -Borrower | |
| _____ (Seal) | _____ (Seal) | |
|                            -Borrower |                            -Borrower | |

EF815N (11/06)
Loan N~~⌐~~

## Note Endorsements

Borrower(s): Ruben A Pierre & Avis K Pierre
Property Address: 125 East Providence Road, Aldan, PA  19018

Without Recourse, Pay to the Order of:

EquiFirst Corporation

By: _____

Steve Lin
Assistant Vice President

*Paul Gilroy*

Page 1 of 1

EF5nendr (12/05)

RD BK04075-1149          BIG-MORTGAGE

2007032801   04/18/2007 10:18:49 AM:2

Return to:
WEICHERT CLOSING SERVICES CO
220 Commerce Drive
Ft. Washington, PA 19034
215-643-3317

Prepared By:

Leemour BanksSmith
500 Forest Point Circle.
Charlotte. NC 28273

(704)625-4559
Return To:
EquiFirst Corporation
Attn: Collateral M
500 Forest Point Circle
Charlotte, NC 28273

(800)272-3477
Parcel Number:
01-00-00885-00
Premises:
125 East Providence Road. Aldan,
PA 19018

[Space Above This Line For Recording Data]

WCS

# MORTGAGE                          MIN

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 21, 2007 together with all Riders to this document.

(B) "Borrower" is Ruben Pierre and Avis Pierre

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint MI 48501-2026, tel. (888) 679-MERS.

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

-6A(PA) (8508).01      Form 3039   1/01

Page 1 of 16      Initials

VMP Mortgage Solutions, Inc.

Instrument Number: 2007032801 Book/Page: RECORD-04075/1150 Date Filed: 4/16/2007 10:18:49 AM

(D) "Lender" is EquiFirst Corporation

Lender is a Corporation
organized and existing under the laws of North Carolina
Lender's address is 500 Forest Point Circle, Charlotte, NC 28273

(E) "Note" means the promissory note signed by Borrower and dated March 21, 2007
The Note states that Borrower owes Lender one hundred eighty-eight thousand seven
hundred and 00/100                                                       Dollars
(U.S. $188,700.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | ARM Floor/ Prepay Rider |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

-6A(PA)(0505).01                          Page 2 of 16                          Form 3039   1/01

Instrument Number: 2007032801 Book/Page: RECORD-04075/1151 Date Filed: 4/16/2007 10:18:49 AM

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County        [Type of Recording Jurisdiction]
of Delaware                                                                    [Name of Recording Jurisdiction]:
See Attached Exhibit A

which currently has the address of 125 East Providence Road
                                                                                        [Street]
Aldan                              [City], Pennsylvania 19018           [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(PA) (0500).01                       Page 3 of 16                       Form 3039   1/01

Instrument Number: 2007032801 Book/Page: RECORD-04075/1152 Date Filed: 4/16/2007 10:18:49 AM

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

CMB-6A(PA) (0509).01                    Page 4 of 16                    Form 3039   1/01

Instrument Number: 2007032801 Book/Page: RECORD-04675/1153 Date Filed: 4/16/2007 10:18:49 AM

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6A(PA) (0603).01                         Page 5 of 16                         Form 3039   1/01

Instrument Number: 2007032301 Book/Page: RECORD-04075/1154 Date Filed: 4/16/2007 10:18:49 AM

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

-6A(PA) (0505).01                    Page 6 of 16                    Form 3039    1/01

Instrument Number: 2007032801 Book/Page: RECORD-04075/1155 Date Filed: 4/16/2007 10:18:49 AM

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(PA) (0508).01                          Page 7 of 16                          Form 3039   1/01

Instrument Number: 2007032801 Book/Page: RECORD-04075/1156 Date Filed: 4/16/2007 10:18:49 AM

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials:

-6A(PA) (0500).01                   Page 8 of 16                          Form 3039   1/01

Instrument Number: 2007032801 Book/Page: RECORD-04075/1157 Date Filed: 4/16/2007 10:18:49 AM

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(PA) (0509).01                    Page 9 of 16                    Form 3039    1/01

Instrument Number: 2007032801 Book/Page: RECORD-04075/1158 Date Filed: 4/16/2007 10:18:49 AM

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to

have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or

-6A(PA) (0508).01                                Page 12 of 16                                Form 3039    1/01

agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials:

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Initials:

-6A(PA) (0508).01                    Page 14 of 16                    Form 3039    1/01

Instrument Number: 2007032801 Book/Page: RECORD-04075/1163 Date Filed: 4/16/2007 10:18:49 AM

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____    Ruben A Pierre    (Seal)
                                                      -Borrower

_____    Avis K Pierre    (Seal)
                                                     -Borrower

_____ (Seal)     _____ (Seal)
              -Borrower                          -Borrower

_____ (Seal)     _____ (Seal)
              -Borrower                          -Borrower

_____ (Seal)     _____ (Seal)
              -Borrower                          -Borrower

-6A(PA) (0506).01                  Page 15 of 16                 Form 3039   1/01

Instrument Number: 2007032801 Book/Page: RECORD-04075/1164 Date Filed: 4/16/2007 10:18:49 AM

## ADJUSTABLE RATE RIDER to Security Instrument

### (LIBOR 6 Month Index - As Published in *The Wall Street Journal* - Rate Caps)
### (To Be Recorded Together with Security Instrument)

THIS ADJUSTABLE RATE RIDER is made this   21st day of March , 2007  and incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to EquiFirst Corporation (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 125 East Providence Road, Aldan, PA  19018
### (property address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATE THE BORROWER MUST PAY.**

### ADDITIONAL COVENANTS.
In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 9.600 % .  The Note provides for changes in the interest rate and the monthly payment as follows:

**(A) Change Dates**

The interest rate I will pay may change on  April 1, 2009 and on that day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date".

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, The Note Holder will calculate my new interest rate by adding 7.200 percentage points (7.200 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.600% or less than 9.600% .  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) (1.00%) the rate of interest I have been paying for the preceding six months.  My interest rate will never be greater than 15.600 % or less than the initial interest rate provided for in Section 2 of this Note.

EF0611 (05/02)                    Page 1 of 2

Instrument Number: 2007032801 Book/Page: RECORD-04075/1165 Date Filed: 4/16/2007 10:18:49 AM

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my new interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of Property or a Beneficial Interest in Borrower.**   If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates to the transferee to keep all the promises and agreements made in the Note and in the Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____        _____
Ruben A Pierre                          Avis K Pierre


_____        _____


_____        _____


**Page 2 of 2**

Instrument Number: 2007032801 Book/Page: RECORD-04075/1166 Date Filed: 4/16/2007 10:18:49 AM

## ADJUSTABLE RATE  INTEREST RATE FLOOR &
## PREPAYMENT PENALTY Rider to Security Instrument
### (To Be Recorded Together with Security Instrument)

This ADJUSTABLE INTEREST RATE FLOOR & PREPAYMENT PENALTY RIDER (the "Rider") is made this 21st day of March, 2007, and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who signs below (the "Borrower(s)") to EquiFirst Corporation (the "Lender") to secure prepayment of a Note in the amount of U.S. $ 188,700.00.

In addition to the agreements and provisions made in the Note and the Security Instrument, and notwithstanding any provisions to the contrary contained in said Note or the Security Instrument, both the Borrower(s) and the Lender further agree as follows

### ADJUSTABLE INTEREST RATE FLOOR

This loan has an Interest Rate "Floor" which will limit the amount the Interest Rate can decrease. Regardless of any changes in the index, the Interest Rate during the term of this loan will never be less than the initial Interest Rate provided for in Section 2 of the Note.

### PREPAYMENT PENALTY

In the event, during the first  2 years after the execution of this Note, I make a prepayment and the prepayment exceeds twenty percent (20%) of the original principal amount of the loan in any twelve (12) month period, I will pay a prepayment charge in an amount equal to six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the loan within the twelve (12) month period. The Note Holder will not assess a  prepayment penalty after the 2nd anniversary of the date of execution of this Note.

_____          _____
Ruben A Pierre                     Avis K Pierre

_____          _____


_____          _____

Instrument Number: 2007032801 Book/Page: RECORD-04075/1167 Date Filed: 4/16/2007 10:18:49 AM

EXHIBIT "A"
LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground together with the buildings and improvements thereon erected, situate in the Borough of Aldan, County of Delaware, Commonwealth of Pennsylvania, bounded and described in accordance with a plan thereof made for Albert Development Corp. by H. Gilroy Damon Associates, Inc., Civil Engineers, Sharon hill, PA dated 8/31/1979 and recorded 9/25/1979 in Plan Case 13 page 53, as follows:

BEGINNING at a point on the Northwesterly side of Providence Road (50 feet wide) which point is measured South 65 degrees 3 minutes 16 seconds West 50 feet from the point of intersection of the Northwesterly side of Providence Road with the Southwesterly side of Elm Avenue (50 feet wide); thence extending from said beginning point along the Northwesterly side of Providence Road, South 65 degrees 3 minutes 16 seconds West 50 feet to a point; thence extending North 23 degrees 3 minutes 8 seconds West 126.22 feet to a corner of this and Lot #3; thence extending along Lot #3 North 64 degrees 42 minutes 16 seconds East 100 feet to a point on the Southwesterly side of Elm Avenue; thence extending along same South 23 degrees 3 minutes 8 seconds East 15.01 feet to a point, a corner of Lot #2; thence extending along the same the (2) following courses and distances: (1) South 64 degrees 42 minutes 16 seconds West 50 feet to a point and (2) South 23 degrees 3 minutes 8 seconds East 111.52 feet to a point on the Northwesterly side of Providence road, being the first mentioned point and place of beginning.

BEING Lot #1 on said plan.
BEING 125 E. Providence Road.
BEING Folio # 01-00-00885-00.

BEING the same premises which JOSEPH N. SBARAGLIA AND MARY A. SBARAGLIA, HIS WIFE, by Indenture bearing date 9/24/1996 and recorded 9/27/1996 in the Office of the Recorder of Deeds, in and for the County of DELAWARE in Volume 1517 page 882 etc., granted and conveyed unto MARVIN DWIGHT PAYNE, SR. and CAROLYN RICHARDSON PAYNE, HIS WIFE, in fee.

COMMONWEALTH OF PENNSYLVANIA,                                        County ss:

On this, the __31st__ day of __March__ __2007__, before me, the
undersigned officer, personally appeared Ruben A Pierre & Avis K Pierre

                                                                        known to me (or
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes herein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEBORAH A. GIAMPETRO, Notary Public
Nether Providence Twp., Delaware County
My Commission Expires January 19, 2010

_____
Title of Officer

**Certificate of Residence**
I, _____, do hereby certify that
the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

    Witness my hand this 21st          day of March, 2007

_____
Agent of Mortgagee

1159809

....-6A(PA) (0508).01                          Page 16 of 16          Initials:          Form 3039   1/01

Instrument Number: 2011026080 Book/Page: RECORD-04930/0650 Date Filed: 5/3/2011 1:31:07 PM

Record & Return to : SearchTec
314 N 12th St, Suite 100 Phila, Pa. 19107

Prepared by:
Richard M. Squire, Esquire
115 West Avenue, Suite 104
Jenkintown, PA 19046

Phone: (215) 886-8790
Fax: (215) 886-8791
Loan # 13036579813

Parcel No. 01-00-00885-00

I do certify that the precise
residence of the within
named Assignee is:
The Bank of New York Mellon Trust Co.
c/o BSI Financial Services, Inc.
314 South Franklin Street
Titusville, PA 16354
Signed:

## ASSIGNMENT OF MORTGAGE

COMMONWEALTH OF PENNSYLVANIA          :
DELAWARE COUNTY, PENNSYLVANIA         :

FOR VALUE RECEIVED, the undersigned, Mortgage Electronic Registration Systems, Inc. as nominee for EquiFirst Corporation its successors and assigns, does hereby grant, bargain, sell, convey, assign and deliver unto The Bank of New York Mellon Trust Company, National Association as grantor trustee of the Protium Master Grantor Trust that certain Mortgage dated 03/21/2007 executed by Ruben A. Pierre and Avis K. Pierre to Mortgage Electronic Registration Systems, Inc. as nominee for EquiFirst Corporation its successors and assigns in the original amount of One Hundred Eighty Eight Thousand Seven Hundred Dollars ($188,700.00), to the undersigned, which Mortgage is recorded in the Office of the Recorder of Deeds of Delaware County, Pennsylvania, in Book 04075, Page 1149 as Instrument No. 2007032801, on 04/16/2007, together with the debt thereby secured and the note in the original amount therein described and all right, title and interest of the undersigned in and to the land and property conveyed by said Mortgage, said premises being situated in the County of Delaware, Commonwealth of Pennsylvania, and known as:

RD BK04930-0650                    AS-ASSIGNMENTS
2011026080   05/03/2011 01:31:07 PM:14
RCD FEE: $65.50

## EXHIBIT "A"

ALL THAT CERTAIN lot or piece of ground together with the buildings and improvements thereon erected, situate in the Borough of Aldin, County of Delaware, Commonwealth of Pennsylvania, bounded and described in accordance with a plan thereof made for Albert Development Corp. by H. Gilroy Damon Associates, Inc., Civil Engineers, Sharon Hill, PA. dated 8/31/1979 and recorded 9/25/1979 in Plan Case 13 page 53, as follows:

BEGINNING at a point on the Northwesterly side of Providence Road (30 feet wide) which point is measured South 65 degrees 3 minutes 16 seconds West 50 feet from the point of intersection of the Northwesterly side of Providence Road with the Southwesterly side of Elm Avenue (50 feet wide); thence extending from said beginning point along the Northwesterly side of Providence Road, South 65 degrees 3 minutes 16 seconds West 50 feet to a point; thence extending North 23 degrees 3 minutes 8 seconds West 126.22 feet to a corner of this and Lot #3; thence extending along Lot #3 North 64 degrees 42 minutes 16 seconds East 100 feet to a point on the Southwesterly side of Elm Avenue; thence extending along same South 23 degrees 3 minutes 8 seconds East 15.04 feet to a point, a corner of Lot #2; thence extending along the same the (2) following courses and distances: (1) South 64 degrees 42 minutes 16 seconds West 50 feet to a point and (2) South 23 degrees 3 minutes 8 seconds East 111.92 feet to a point on the Northwesterly side of Providence road, being the first mentioned point and place of beginning.

BEING Lot #1 on said plan.
BEING 125 E. Providence Road.
BEING Folio # 01-00-00685-00.

BEING the same premises which JOSEPH N. SBARAGLIA AND MARY A. SBARAGLIA, HIS WIFE, by Indenture bearing date 9/24/1996 and recorded 9/27/1996 in the Office of the Recorder of Deeds, in and for the County of DELAWARE in Volume 1517 page 882 etc., granted and conveyed unto MARVIN DWIGHT PAYNE, SR. and CAROLYN RICHARDSON PAYNE, HIS WIFE, in fee.

4

See Exhibit "A" attached hereto for a complete legal description

Commonly known as: 125 East Providence Road, Aldan, PA 19018

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed in its name by its duly authorized officers, on 04-25-2011 .

| Attest: Mortgage Electronic Registration Systems, Inc. as nominee for EquiFirst Corporation its successors and assigns | Attest: Mortgage Electronic Registration Systems, Inc. as nominee for EquiFirst Corporation its successors and assigns |
|---|---|
| By: | By: |
| Name: Bob Jablonsky | Name: Karen L Shoup |
| Title: Assistant Secretary | Title:    Assistant Secretary |

Commonwealth of Pennsylvania
County of Crawford

On 04-25-2011 , before me, Tammy L Witherow personally appeared Karen L Shoup (name), Assistant Secretary (title) and Bob Jablonsky (name), Assistant Secretary (title) who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the Commonwealth of Pennsylvania that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____
Notary Public

NOTARIAL SEAL
TAMMY L WITHEROW
Notary Public
TITUSVILLE CITY, CRAWFORD CNTY
My Commission Expires Jan 26, 2014

2

ASSIGNMENT OF MORTGAGE

BETWEEN:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
EQUIFIRST CORPORATION ITS SUCCESSORS AND ASSIGNS

AND

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL
ASSOCIATION AS GRANTOR TRUSTEE OF THE PROTIUM MASTER GRANTOR
TRUST

MAIL TO:
Richard M. Squire, Esquire
Richard M. Squire & Associates, LLC
115 West Ave., Ste. 104
Jenkintown, PA  19046

3

Instrument Number: 2014041601 Book/Page: RECORD-05532/2294 Date Filed: 8/12/2014 2:20:59 PM

RD BK05532-2294
2014041601    08/12/2014 02:20:59 PM:2
RCD FEE: $78.50

AS-ASSIGNMENTS

THE ABOVE SPACE FOR RECORDING USE ONLY

Prepared by: _Rebecca_ / RS

Tax ID #: _____

ASSIGNMENT OF MORTGAGE
PENNSYLVANIA

This ASSIGNMENT OF MORTGAGE from THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, AS GRANTOR TRUSTEE OF THE PROTIUM MASTER GRANTOR TRUST,, whose address is c/o Ocwen Loan Servicing, LLC. , 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to ARLP TRUST whose address is c/o Ocwen Loan Servicing, LLC. , 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is acknowledged. THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, AS GRANTOR TRUSTEE OF THE PROTIUM MASTER GRANTOR TRUST does hereby assign all of its right, title and interest, as holder of, in, and to the following described mortgage, the property described and the indebtedness secured by the mortgage to the above referenced Assignee.

Mortgagor:      RUBEN A. PIERRE AND AVIS K. PIERRE
Mortgagee:      MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR
                EQUIFIRST CORPORATION
Dated:          MARCH 21, 2007
Amount:         $ 188,700.00
Recorded:       APRIL 16, 2007
County:         DELAWARE
Instrument :    2007032801
Book:           04975
Page:           1149

Property Address: 125 EAST PROVIDENCE ROAD, ALDAN, PA 19018

To.

Assignor, by its appropriate corporate officers, has executed and sealed with its corporate seal this Assignment of Mortgage on this _22nd_ day of _July_ , 2014

THE BANK OF NEW YORK MELLON TRUST COMPANY,
NATIONAL ASSOCIATION, AS GRANTOR TRUSTEE OF THE
PROTIUM MASTER GRANTOR TRUST
BY IT'S ATTORNEY-IN-FACT
OCWEN LOAN SERVICING, LLC

ATTEST:

Name: Brandy Berns                      Name: Rebecca Damme
Title:   Authorized Signer              Title:   Authorized Signer

STATE OF IOWA            )
                         )SS
COUNTY OF BLACK HAWK     )

BE IT REMEMBERED, that on this _22nd_ day of _July_ , 2014, before me, the subscriber, a Notary Public personally appeared _Brandy Berns_ , Authorized Signer and _Rebecca Damme_ , Authorized Signer at OCWEN LOAN SERVICING, LLC. A LIMITED LIABILITY COMPANY, ATTORNEY-IN-FACT FOR THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, AS GRANTOR TRUSTEE OF THE PROTIUM MASTER GRANTOR TRUST, who I am satisfied are the persons who signed the within instrument and they acknowledged that they signed, sealed with the corporate seal and delivered the same as such officers aforesaid, and that the within instrument is the voluntary act and deed of such corporation made by virtue of a Resolution of its Board of Directors.

KAREN SMITH
COMMISSION NO.784549
MY COMMISSION EXPIRES
JUNE 19, 2017

Notary Public –                      Karen Smith

I hereby certify the address of the Assignee is:

c/o Ocwen Loan Servicing, LLC
3451 Hammond Ave,
Waterloo, IA 50702
Phone Number: 800-766-4622

NAME Rebecca Damme

When Recorded Mail To:
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835

Instrument Number: 2015027466 Book/Page: RECORD-05651/0918 Date Filed: 6/5/2015 1:43:19 PM

RD BK05651-0918
2015027466     06/05/2015 01:43:19 PM:5
RCD FEE. $78.50                                 AS-ASSIGNMENTS

When Recorded Return To:
OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401

Assessor's/Tax ID No. 01-00-00885-00

## CORPORATE ASSIGNMENT OF MORTGAGE

Delaware, Pennsylvania
SELLER'S SERVICING #                RRE P
INVESTOR'S LOAN #:
OLD SERVICING

Date of Assignment: April 20th, 2015
Assignor: Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual
capacity but solely as Owner Trustee for ARLP Trust BY ITS ATTORNEY IN FACT OCWEN LOAN
SERVICING LLC
Assignee: WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY
BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2

I hereby certify the precise address of the within named Assignor is 1661 WORTHINGTON RD, SUITE
100, WEST PALM BEACH, FL  33409.

I hereby certify the precise address of the within named Assignee is C/O ALTISOURCE ASSET,
MANAGEMENT CORP. 402 STRAND ST, FREDERIKSTED, VI  00840.

Executed By: RUBEN A. PIERRE AND AVIS K. PIERRE  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR EQUIFIRST
CORPORATION, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 03/21/2007 Recorded: 04/16/2007 In Book/Reel/Liber: 04075 Page/Folio: 1149 as
Instrument/Document: 2007032801 In the County of Delaware, State of Pennsylvania.
125 EAST PROVIDENCE ROAD, ALDAN, PA  19018 in the Borough of ALDAN

I do certify that the precise address of WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS
INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2 is
C/O ALTISOURCE ASSET, MANAGEMENT CORP. 402 STRAND ST, FREDERIKSTED, VI  00840
Attested By: _Luesa Heyerga_

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $188,700.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,
and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under
the Security Instrument.

Instrument Number: 2015027466 Book/Page: RECORD-05651/0919 Date Filed: 6/5/2015 1:43:19 PM

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee for ARLP Trust BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING LLC On _____APR 2 2 2015_____

5651
915

Power of Attorney
being recorded concurrently

By: _____
TERESA REYENGA  / Authorized
Signer

STATE OF _____ Iowa
COUNTY OF _____ Black Hawk

On _____APR 2 2 2015_____, before me, _____LYNNE M JOHNSON_____, a Notary Public in and for _____Black Hawk_____ in the State of _____Iowa_____, personally appeared _____TERESA REYENGA_____, Authorized Signer of Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee for ARLP Trust BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
LYNNE M JOHNSON

LYNNE M JOHNSON
COMMISSION NO.768872
MY COMMISSION EXPIRES
FEBRUARY 24, 2018

Notary Expires:  /  FEB 2 4 2018

(This area for notarial seal)

*/
P,

Instrument Number: 2016021537 Book/Page: RECORD-05802/0950 Date Filed: 5/3/2016 1:06:23 PM

RD BK05802-0950                          AS-ASSIGNMENTS

2016021537    05/03/2016 01:06:23 PM:5
RCD FEE: $78.50

When Recorded Return To:
OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401

Assessor's/Tax ID No. 01-00-00885-00

## CORPORATE ASSIGNMENT OF MORTGAGE

Delaware, Pennsylvania
SELLER'S SERVICING #:
SELLER'S LENDER ID#:
OLD SERVICING /

Date of Assignment: March 29th, 2016
Assignor: ARLP TRUST BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC
Assignee: WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY
BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2

I hereby certify the precise address of the within named Assignor is 1661 WORTHINGTON RD, SUITE
100, WEST PALM BEACH, FL 33409.

I hereby certify the precise address of the within named Assignee is C/O OCWEN LOAN SERVICING,
LLC., 1661 WORTHINGTON RD, SUITE 100, WEST PALM BEACH, FL 33409.

Executed By: RUBEN A PIERRE AND AVIS K PIERRE To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR EQUIFIRST
CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS
Date of Mortgage: 03/21/2007 Recorded: 04/16/2007 in Book/Reel/Liber: 04075 Page/Folio: 1149 as
Instrument/Document: 2007032801 In the County of Delaware, State of Pennsylvania.
Property Address: 125 EAST PROVIDENCE ROAD, ALDAN, PA 19018 in the Township of ALDAN

I do certify that the precise address of WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS
INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2 is
C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON RD, SUITE 100, WEST PALM BEACH,
FL 33409
Attested By: _____

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $188,700.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,
and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under
the Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee

Printed: 9/18/2018

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

forever, subject to the terms contained in said Security Instrument.

ARLP TRUST BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC
On ___4/5/16____

*POA Recorded
10/8/2015 Book 5715 pg 95
Instrument 2015055896*

By: _Urlena Snailen_____
    ~~Vicidi Sauce~~, Authorized
Signer

STATE OF ___Pennsylvania___
COUNTY OF ___Montgomery___

On __4/5/16___, before me, ___Amber R. Wilson___, a Notary Public in and for
___Montgomery___ in the State of ___Pennsylvania___ personally appeared ___Victoria Sauce___
Authorized Signer of ARLP TRUST BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_____
Amber R. Wilson
Notary Expires: 1/11/2020

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Amber R Wilson
Upper Dublin Twp, Montgomery County
My Commission Expires 01/11/2020

(This area for notarial seal)

RD BK05919-1331    GB-GENERAL MISCELLANEOUS WITH FOLIOS

2016065295    12/06/2016 02:28:29 PM:1

RCD FEE $43.00

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94ᵗʰ Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

PIN# 01-00-00685-00

Loan No
Svcr Ln N

_____ Space above for Recorder's use _____

## RELEASE OF ASSIGNMENT OF MORTGAGE

Through inadvertence and mistake the undersigned executed an Assignment of Mortgage referenced below in the official records of said county. The undersigned, being duly sworn and state under oath that they hereby INVALIDATE and NULLIFY the assignment to the same extent and effect as though the assignment had never been issued and recorded.

Filed of Record:    06/05/2015 In Book/Liber/Volume 05651, Page 0918,
Document/Instrument No: 2015027466 in the Recording District of DELAWARE, PA
Assignor:    CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST
Assignee:    WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2

The Assignment of Mortgage refers to the following described Mortgage:
Borrower(s):    REUBEN A. PIERRE AND AVIS K. PIERRE
Lender:    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EQUIFIRST CORPORATION, ITS SUCCESSORS AND ASSIGNS
Filed of Record:    04/16/2007 in Book/Liber/Volume 4975, Page 1149, Instrument No: 2007032801 in the Recording District of DELAWARE, PA.

Property more commonly described as: 125 EAST PROVIDENCE ROAD, ALDAN, PENNSYLVANIA 19018

Instrument Number: 2016065295 Book/Page: RECORD-05919/1332 Date Filed: 12/6/2016 2:28:29 PM

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____10-25-16_____

CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST, BY MERIDIAN ASSET SERVICES, INC., ITS ATTORNEY-IN-FACT

By: DAN SLEDD
Title: VICE PRESIDENT

Witness Name: JAMIE OLGI

I hereby certify the precise address of the within named WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2 (Assignee) is C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED, USVI 00820.

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of        FLORIDA
County of       PINELLAS

On __10-25-16__, before me, BRUCE DORAN, a Notary Public, personally appeared DAN SLEDD, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, INC., AS ATTORNEY-IN-FACT FOR CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of FLORIDA that the foregoing paragraph is true and correct. I further certify DAN SLEDD, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): BRUCE DORAN
My commission expires: 4/18/2020

BRUCE DORAN
MY COMMISSION # FF 963108
EXPIRES: April 18, 2020
Bonded Thru Budget Notary Services

Instrument Number: 2017039556 Book/Page: RECORD-06035/1897 Date Filed: 7/26/2017 12:12:04 PM

AS-ASSIGNMENTS

RD BK06035-1897
2017039556    07/26/2017 12:12:04 PM:2
RCD FEE: $78.50

Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

APN/PIN# 01-00-00885-00

Space above for Recorder's use

Loan N
Svcr Ln N

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2**, whose address is C/O ALTISOURCE ASSET MANAGEMENT CORPORATION, 36C STRAND STREET, CHRISTIANSTED, USVI 00820, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST**, whose address is U.S. BANK CORPORATE TRUST SERVICES, DOCUMENT CUSTODY SERVICES, 1133 RANKIN STREET, SUITE 100, ST. PAUL, MN 55116, EP-MN-TMZD, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 3/21/2007
Original Loan Amount: $188,700.00
Executed by (Borrower(s)): REUBEN A. PIERRE AND AVIS K. PIERRE
Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EQUIFIRST CORPORATION, ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book/Liber/Volume 4075, Page 1149,
Document/Instrument No: 2007032801 in the Recording District of DELAWARE, PA, Recorded on 4/16/2007.
MUNICIPALITY: BOROUGH OF ALDAN

Property more commonly described as: 125 EAST PROVIDENCE ROAD, ALDAN, PENNSYLVANIA 19018

The Power of Attorney, was filed in _Bourbon_ County, State of _Kentucky_ on 10/3/2016 in 124562.

Instrument Number: 2017039556 Book/Page: RECORD-06035/1898 Date Filed: 7/26/2017 12:12:04 PM

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 6-29-17

WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2, BY MERIDIAN ASSET SERVICES, INC., ITS ATTORNEY-IN-FACT

By: MATTHEW KRUEGER
Title: VICE PRESIDENT

Witness Name: MAKAYLA MITCHELL

I hereby certify the precise address of the within named US BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST (*Assignee*) is U.S. BANK CORPORATE TRUST SERVICES, DOCUMENT CUSTODY SERVICES, 1133 RANKIN STREET, SUITE 100, ST. PAUL, MN 55116, EP-MN-TMZD.

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of        FLORIDA
County of       PINELLAS

On 6/29/17         , before me, JAMIE OLGIA, a Notary Public, personally appeared MATTHEW KRUEGER, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, INC., AS ATTORNEY-IN-FACT FOR WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of FLORIDA that the foregoing paragraph is true and correct. I further certify MATTHEW KRUEGER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): JAMIE OLGIA
My commission expires: 04/12/2020

JAMIE OLGIA
MY COMMISSION # FF 981366
EXPIRES: April 12, 2020
Bonded Thru Budget Notary Services

Fill in this information to identify your case and this filing.

| | | | |
|---|---|---|---|
| Debtor 1 | Avis Katrenna Pierre | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Eastern District of Pennsylvania

Case number    18-17617

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.** 125 East Providence Road
Street address, if available, or other description

Aldan                    PA      19018-40
City                     State   ZIP Code

Delaware County
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$ 260,000.00    $ 130,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
Tenancy by the Entireties

☐ Check if this is community property

If you own or have more than one, list here:

**1.2.** _____
Street address, if available, or other description

_____
City          State   ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$ _____    $ _____

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
_____

☐ Check if this is community property
(see instructions)